# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CR 18-14-GF-BMM |
| **STANLEY PATRICK WEBER**, | ) |
| Defendant. | ) |

## MOTION TO SUPPRESS SEARCH WARRANT

**COMES NOW** the Defendant, Stanley Patrick Weber, by and through his undersigned counsel, and moves this court for an order suppressing the admission of items seized pursuant to a defective search warrant:

AS GROUNDS THEREFOR, the Defendant states as follows:

1. This is an action wherein Defendant Stanley Patrick Weber ("Weber") is charged with violations of §18 USC et al concerning the alleged sexual abuse of minors.

2. In conducting its investigation of Weber, Health and Human Services Special Agent Curt Miller applied for a Search Warrant on February 24, 2017. Said "Application" is attached hereto as Exhibit "A".

3. The application referred to, and included, an Affidavit in Support of Application for Search Warrant and Attachments A-E. The Affidavit, including attachments, is 37 pages. The part of the "Affidavit" most pertinent to this motion (Attachment B, Items To Be Seized) is attached hereto as Exhibit "B".

4. In response to the Application, on February 24, 2017 the court authorized a Search and Seizure Warrant, which warrant was required to be executed on or before March 10, 2017. That "Warrant" is attached hereto as Exhibit "C".

5. Law enforcement executed the Warrant on February 28, 2017. The "Receipt", itemizing the property seized, is attached hereto as Exhibit "D".

6. The Warrant is not supported by the probable cause required to be legally valid. The information contained therein consists of unreliable accusations from dubious sources. Efforts at independent verification are insufficient for the court to conclude that the Affidavit is a reliable source of factual information.

7. The lack of probable cause extends to other deficiencies in the Warrant and its accompanying Affidavit. Specifically, and insofar as the Warrant sought the search of a home unrelated to any of the accusations in the case, the Affidavit fails to show the required nexus between the accusations and the location. Specifically, the Warrant authorizes a search of a house to which Weber had just relocated; other than general platitudes and speculation about Weber's possible character, no facts are alleged to demonstrate that Weber should have evidence of crime at this place.

8. Nor does the Affidavit sufficiently show a nexus between the allegations made and the items to be found, instead appearing to rely on the general rubric of sexual activity to broaden a search to issues and possibilities unrelated to specific charges: things like international sex travel and underage pornography are entirely speculative conduct, insofar as they are not adequately substantiated by additional police intelligence gathering.

9. Likewise, much of the information, even if true, is stale; that is, it does not represent evidence of active criminality. With that consideration in mind, it is incumbent on law enforcement to better develop their leads, corroborate their stories, and obtain independent verification before the court should grant them legal permission to search a person's residence.

10. In addition to the foregoing, this court should suppress the items seized pursuant to the Warrant, as the Warrant is invalid on its face. It fails to identify, with any reasonable particularity, the property to be seized, instead describing the materials as "evidence of a crime" which is located at Weber's property. Law enforcement is not entitled to rely in good faith on such a deficient Warrant.

11. This deficiency is not cured by the fact that the Warrant had been entered pursuant to the Application, even though that Application is supported by the Affidavit, which describes the evidence sought in detail. For a warrant to validly incorporate an affidavit, that affidavit must be referenced in the warrant. Reference in the application is not sufficient. In this case, the Warrant never specifically references the Affidavit.

12. At a minimum, the court should suppress the items seized which are associated with, or reflective of, the crime of "International Sex Travel" (i.e. 18 USC 2423(b)). Notwithstanding the fact that this crime is referenced in the Affidavit, it is contradicted by the Application, which makes an express declaration of the crimes being contemplated in the search; 18 USC 2423(b) is not included. As a consequence, any items which were seized as part of an investigation of that crime is absolutely outside the scope of the Warrant, and not subject to search and seizure.

## THE SEARCH WARRANT LACKED SUFFICIENT PROBABLE CAUSE

13. Before law enforcement had legal authority to invade Weber's home at 2315 5th Avenue in Spearfish, South Dakota, they needed a valid search warrant. And to obtain such a search warrant, law enforcement needed to first demonstrate that they had probable cause to believe that the home contained evidence of crime.

> "Probable cause means a 'fair probability that contraband or evidence of a crime will be found in a particular place' given the circumstances set forth in the affidavit." *U.S. v.*

*Horn*, 187 F.3d 781, 785 (8th Cir. 1999), *citing Illinois v. Gates*, 462 U.S. 213, 238 (1983)

14. Such requisite probable cause was lacking in this case. Law enforcement's investigation was devoid of any physical evidence and was based entirely on the stories of three accusers, only supported by innuendo and speculation. As such, the Warrant fails to provide the facts or details necessary to give the court the basis to believe either contraband or evidence of crime was in Weber's home.

15. In fact, the Affidavit supporting the Warrant lacks sufficient information to confirm that law enforcement was not merely acting on uncorroborated statements. This is especially crucial given the troubled histories of the accusers, including some jail time. For probable cause to exist, independent verification should be expected.

16. Compare the present case to *U.S. v. Stevens, 530 F.3d 714 (8th Cir. 2008)*, just one such example of thorough police investigation leading to a valid finding of probable cause:

> "The hearsay information included in the affidavit provided sufficient indicia of reliability to support a finding of probable cause…In addition to the above described indicia of the informants' veracity, reliability, and strong basis of knowledge, the information they provided was sufficiently corroborated to support a finding of probable cause." *Id., at p. 718-719*

17. Unlike in *Stevens*, in this case law enforcement have not adequately shown their outcry witnesses to be truthful, reliable, or knowledgeable, and independent corroboration was insufficient. Absent this additional material, the Court should not have found probable cause based on the Warrant or its Affidavit.

### THE SEARCH WARRANT FAILED TO DEMONSTRATE A SUFFICIENT NEXUS BETWEEN THE ALLEGED CRIMES AND THE PLACE BEING SEARCHED

18. The Search Warrant was substantively flawed, as a matter of law, insofar as it failed to sufficiently establish that the items being sought were likely to be found in the home being searched. It is important to note that Weber had moved out of the property identified in the Affidavit, which is where many alleged actions were said to have occurred. Thus, the search was not of a potential crime scene, but instead merely the home of the suspect. It is incumbent upon the affiant seeking the search to demonstrate a nexus between the location and the alleged criminal evidence.

> "[T]here must be a evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez, 217 F.3d 547,550 (8th Cir. 2000)*

19. Here, the only apparent nexus is Weber himself. None of the crimes are alleged to have occurred in the location searched. Indeed, there is no indication that any of the accusers had ever been there. This is underscored by the fact that Weber moved to this house to be closer to his home after he had retired from medicine.

20. At most, the Affidavit argues that Weber was likely to have kept mementos from his past associations with the accusers. Such an argument, although couched in the language of expertise, is merely a generic recitation of an obvious fact of life: people are likely to keep items to remember their past. What is plainly missing are statements from informants, physical surveillance, or other investigative techniques that might substantiate the specific belief that Weber maintained evidence of sexual assaults in his new home. As in another case concerning a defendant named Weber, the affiant's testimony in the Affidavit is 'foundationaless'.

> "In this case, the 'expert' testimony in the affidavit was foundationless. It consisted of rambling boilerplate recitations designed to meet all law enforcement needs. It is clear that the 'expert' portion of the affidavit was not drafted with the facts of this case or this particular

> defendant in mind. Agent Burke reported that detective Dworin knew the habits of 'child molesters', 'pedophiles', and 'child pornography collectors' and that from this knowledge of these classes of persons he could expect certain things to be at their houses, from diaries to sexual aids to photo developing equipment…" *U.S. v. Weber* [sic]*, 923 F.2d 1338, 1345 (9th Cir. 1990)*

21. Additionally, the Affidavit indicates an intent to search for pornography. However, the only allegation concerning pornography arises during reference to one accuser, EHH. This reference, though, is to heterosexual pornography not involving children. It is also conspicuous insofar as it is not clear when the incident is alleged to have occurred; EHH's age is not identified, nor is the date of the supposed event. Thus, the events described are not indicative of the usage of child pornography. Plainly, then, the nexus between the probable cause for the search and the information upon which the search is based is lacking.

22. A similar lack of nexus exists between the accusers' stories and the search for travel materials. None of the accusers related their own international travels. Rather, the expectation that Weber traveled overseas for underage sex was a rumor that law enforcement appears to have propagated. It certainly lacks any stated nexus with the actual criminality being investigated.

## THE SEARCH WARRANT RELIED ON STALE INFORMATION TO ESTABLISH PROBABLE CAUSE

23. The ultimate basis of the Warrant are the claims reported in interviews with purported victims. The allegations, however, are made by people about conduct that supposedly occurred years ago, and notably absent from most of the lurid stories is any applicable date. The court thus has reason to be concerned that the information is not accurate or indicative of ongoing criminal activity, and the search should be quashed insofar as it relied upon stale information. [e.g. "A delay in executing a

search warrant may make probable cause fatally stale." *U.S. v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992)*]

24. In *Rugh*, the court noted other factors to determine that potentially stale allegations were acceptable to justify the warrant. But in that case, those other factors reflected that the suspect was actively engaged in ongoing sexual exploitation of minors. Even at its worst, the allegations in the Affidavit for this case reflect past conduct tied to Weber's profession as a pediatrician. Yet officers, at the time of seeking the Warrant, knew that Weber had retired and moved, and the Affidavit indicates no basis to believe abuse was actively occurring. As such, further investigation was warranted before old allegations sufficed to establish probable cause to invade the sanctity of Weber's home.

## **THIS COURT SHOULD SUPPRESS THE RESULTS OF THE SEARCH WARRANT BECAUSE IT IS INVALID ON ITS FACE SINCE IT FAILS TO IDENTIFY ANY ITEMS TO BE SEIZED WITH ANY PARTICULARITY**

25. The United States Constitution requires that law enforcement obtain authorization from a court of law before persons can be searched and items can be seized.

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized" *U.S. Constitution, Amendment IV*

26. As is plainly noted in this original constitutional text, the authorization includes an obligation that the search warrant which authorizes the search meet a standard of specificity. This has long been recognized in the law.

> "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional" *Massachusetts v. Sheppard, 104 S.Ct. 3424, Footnote 5 (1984)*

27. In this case, the Warrant fails this requirement. In response to the prompt "identify the person or describe the property to be seized", the warrant states "evidence of a crime". The only practical limitation is that the search is to be limited to Weber's home (that is, the Warrant describes the house by its address and a brief description).

28. Plainly, "evidence of a crime" located inside Weber's home fails to give any particularity regarding anything being seized. Instead, it gives carte blanche authorization for the officer executing the warrant to go anywhere in the house. It then entitles that officer to seize anything they choose, since any tangible thing of value has the potential to be stolen goods or a container for contraband. It certainly fails to put Weber on notice as to the limits to which his security has been legally abridged. Therefore, the warrant on its face is not sufficient to meet the standards required by the United States Constitution.

29. In such a situation, law enforcement does not have a retort that the search and seizure was done in good faith, and was therefore permissible even if it was done using a flawed search warrant, as has been articulated in *United States v. Leon, 468 U.S. 897 (1984)*.

> "Even if a search warrant is deemed invalid, evidence obtained pursuant to a warrant is not automatically suppressed. Such evidence is admissible when it is objectively reasonable for a police officer to have relied in good faith on the issuing judge's probable cause determination…The Court in *Leon* cited four circumstances in which the good-faith exception does not apply:…(4) when the warrant is 'so facially deficient' that

> no police officer could presume the warrant to be valid."
> *U.S. v. Puckett, 466 F.3d 626, 630 (8th Cir. 2006)* citing *United States v. Leon, 468 U.S. 897 (1984)*

30. A search warrant which describes the scope of the search as including all "evidence of a crime" is so facially deficient. In a similar case, the Supreme Court of the United States identified a warrant as facially invalid when it only described the home, and nothing inside.

> "…in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of 'a single residence…blue in color.' In other words, the warrant did not describe the items to be seized *at all* [Emphasis in original]. In this respect the warrant was so obviously deficient that we must regard the search as "warrantless" within the meaning of our case law. *Groh v. Ramirez, 124 S.Ct. 1284, 1290 (2004)*

31. If the 'facially invalid' standard identified in *Puckett* is to have any meaning, the present case should certainly apply. While there are words that are used when describing the scope of the search, those words are the enigmatic "evidence" of "crime". Absent a literal blank space, it is difficult to imagine a more opaque description.

32. The practical effect, then, was that law enforcement conducted a warrantless search of Weber's home. This is an affront to our legal system, absent some extreme circumstances.

> "We are not dealing with formalities…[b]ecause 'the right of a man to retreat into his own home and there be free from unreasonable government intrusion' stands '[a]t the very core of the Fourth Amendment…our cases have firmly established the 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable…Thus, 'absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even

when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." *Groh v. Ramirez*, 124 S. Ct. 1284,1290-1291 (2004) [Internal Citations Omitted]

## **THE FACIALLY INVALID SEARCH WARRANT IS NOT CURED BY THE AFFIDAVIT REFERENCED IN THE APPLICATION SINCE THE AFFIDAVIT IS NOT REFERENCED IN THE SEARCH WARRANT**

33. Arguably, the ambiguity identified in the Warrant is made more understandable when viewed in light of the Application, where the prompt "identify the person or describe the property to be seized" is responded to with "See Affidavit in Support of Application for Search Warrant and Attachments A-E". That Affidavit, when read in its entirety, describes an investigation which precipitated the Application. Weber concedes that it has been incorporated into the Application by reference.

34. This incorporation, however, is not enough to save the Warrant because the incorporation by reference is found only in the Application. No such similar specific incorporation or direct reference is in the actual Warrant. This is fatal to the validity of the Warrant.

> "The government concedes that the April 4 warrant is facially defective for failing to specify the items to be seized, but contends that the affidavit cured this defect by listing particular items. To work this curative effect, an affidavit must be specifically incorporated by reference in and physically attached to the warrant, or at least referenced in the warrant and physically present at the search site." *U.S. v. Decker*, 956 F.2d 773, 778 (8th Cir. 1992)

35. Note that it is not sufficient merely that the Affidavit accompany the Warrant, as might occur when all papers are given to a suspect at the time that a search warrant is being executed. While physical accompaniment of an affidavit with a search

warrant is crucial, specific reference in the search warrant to the affidavit being utilized is *also required*.

> "The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the scope of the warrant…However, a description in the supporting affidavit can supply the requisite particularity if a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein…The government concedes that both criteria must be met. The search warrant did not contain suitable words of reference incorporating the affidavit, such as 'see attached affidavit'…" *U.S. v. Curry, 911 F.2d 72, 77 (8th Cir. 1990)*

36. Thus, the prosecutor in the present case cannot cure any possible defect in the Warrant by relying upon any apparent specificity in the Affidavit; the Affidavit is not suitably referenced anywhere in the Warrant, and therefore does not constitute a basis to clarify the Warrant's facial deficiency.

## THE FACIALLY INVALID SEARCH WARRANT IS NOT CURED BY INCLUDING A GENERALIZED REFERENCE TO AFFIDAVIT(S)

37. The only scant reference to an affidavit which is included in the Warrant is a phrase that is included as part of the generalized form, appearing after the space where specificity is usually required but where this Warrant merely described "evidence of a crime". That phrase says "I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property."

38. The phrase is plainly generic, insofar as it allows for the conclusion that *either* one or more affidavits, *or* recorded testimony, was utilized in crafting the scope and terms of the Warrant. No labeling or specific reference to the Affidavit included with the Application is included, in contrast to the highly descriptive label that does

appear on the Application (e.g. "See Affidavit in Support of Application for Search and Attachments A-E").  And in an analogous situation, the 8th Circuit Court of Appeals has already determined that such language is insufficient to incorporate an affidavit not otherwise referenced in a search warrant.

39. In *United States v. Strand, 761 F.2d 449 (8th Cir. 1985)*, the court reviewed a situation where law enforcement officers who executed a search warrant seized evidence that exceeded the warrant's description of "stolen mail." In an effort to defend the scope of the search,

> "the government…argues that the warrant in this particular case incorporated the affidavit, satisfying the Fourth Amendment's demand for particularity through the specific listing in the affidavit of the non-generic items to be seized." *Id. at p. 453*

40. This argument flowed from the principle, discussed supra, that a search warrant can be cured of its lack of specificity by the incorporation of a supporting affidavit, when that affidavit is also attached to and delivered with the search warrant.  However, the court held that such incorporation is not accomplished with the type of generic verbiage included in the Warrant in this case.

> "Though the affidavit did accompany the warrant, the warrant states only that "[a]ffidavit(s) [have] been made" and that "grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)." The warrant does not in any way incorporate the affidavit's list of particular items reported missing.  Accordingly, we hold that the warrant authorized a search only for "stolen mail" and that it did not describe the other items to be seized with sufficient particularity to be valid under the Fourth Amendment." *Id. at p. 454*

41. In *Strand*, then, the court decided that the phrase "grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)" was not sufficient incorporation to utilize the details of the affidavit included with the

warrant. In the present case, the analogous language is "I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property." This statement is equally imprecise, so it should be deemed similarly insufficient as a matter of law.

### EVEN IF THE COURT WERE TO ACCEPT THE APPLICATION AS VALIDATING THE SEARCH WARRANT, THE ITEMS SEIZED EXCEEDED THE APPLICATION

42. Even if this court were to dismiss the plain defects in the Warrant and choose to rely on the Application to determine the valid scope of the Warrant, the court should still suppress much of the search since many of the seized items exceeded the scope of the Application.

43. Specifically, the Application states that "The search is related to a violation of 18 USC 2241, 2422 [sic][1], and 2243…" All of these statutes concern allegations of child sexual abuse. The Affidavit, however, (and specifically its Attachment B, Items To Be Seized) seeks to obtain materials "designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2241, 2242, 2243 (sexual abuse) and 2423(b) (International Sex Travel)". The distinction between the two is that the Application makes no reference to the crime of International Sex Travel.

44. Yet, among the items seized are: Printed Travel Documents (*Receipt, Item 9*); Eight U.S. passports (*Receipt, Item 10*); Travel documents (*Receipt, Item 11*); Mariott Rewards Summary (*Receipt, Item 16*); Receipts and travel documents found in box labeled 2013 + 2014 (*Receipt, Item 26*); and Travel Documents (*Receipt, Item 30*).

---

[1] This appears to be a typographical transposition of the numbers 2 and 4, and should properly be read as 2242. The Affidavit, and the ultimate indictment, allege that Weber has violated 18 USC 2241, 18 USC 2242, and 18 USC 2243.

45. Admittedly, all such documents could theoretically comprise "evidence of a crime", but that is why the Warrant is facially invalid. Setting aside that defect, those materials plainly are not related to the criminal violations contained in the Application. Instead, they appear to have been obtained under the auspices of investigating Weber for "international sex travel", insofar as they relate to air travel overseas. Yet such a topic is not only not included in the Warrant, it is contradicted by the Application's list of crimes being investigated, which should be read to exclude this topic for investigation. *Expressio Unius Est Exclusion Alterius* (the expression of one thing is the exclusion of another).

## CONCLUSION

46. The Affidavit in support of the Warrant lacks sufficient probable cause to justify issuance of the Warrant. The Warrant relies on the accusations of people without sufficient verification, and fails to adequately explain why those accusations lead one to conclude that evidence of crime should be found at Weber's residence. To the contrary, the Affidavit makes broad, blanket conclusions that do not rely on specific police investigation.

47. The Warrant used to search Weber's home is also facially invalid, as it minimally describes what is to be seized by using boilerplate language that is so broad as to render it meaningless. Seeking "Evidence of a Crime", the Warrant provides authorization to search anywhere, and take anything, from Weber's home.

48. While this might seem a mere technical discrepancy, especially since the Application for the search warrant was accompanied by a lengthy Affidavit that described the law enforcement investigation that preceded the application, this is a technical discrepancy recognized by the Supreme Court and this 8th Circuit. The particularity requirement arises under the 4th Amendment to the United States Constitution, so any reference to a supporting affidavit must actually be made in the Warrant.

49. No good faith exception applies, since the error is plain on the face of the Warrant. Nor can it be cured by relation back to the Application for the Warrant, as those are separate legal documents. While the word "affidavit(s)" does appear in the Warrant, it is too general a reference to accomplish incorporation of the Affidavit into the Warrant.

50. This legal argument is dispositive. However, the court should also be concerned about the specific items seized, since they were based on a description in the Affidavit which doesn't even match the Application. The Affidavit is based on a claim of probable cause that certain crimes were committed, but that assertion was left out of the Application (and completely silent in the Warrant). The court cannot allow items to be seized pursuant to such an attenuated connection to the actual authority granted by the court.

51. For the foregoing reasons, the court should suppress the items seized in execution of the Warrant.

52. Undersigned counsel has conferred with Assistant United States Attorney Jeffrey K. Starnes, Esq., representing the United States of America in this case. Mr. Starnes has indicated that he does object to the suppression of any evidence.

**WHEREFORE**, the Defendant prays for the relief requested, and for such other and further relief as to the Court sees just and proper in the premises.

Dated this 13th day of April, 2018.

Respectfully submitted,

/s/ *Ryan T. Cox*
Ryan T. Cox,
Admitted Pro Hac Vice
Colorado Bar Number 49882;
Florida Bar Number 0032686
Springer & Steinberg, P.C.
1600 Broadway
Denver, CO 80202
Tel: 303-861-2800
Fax: 303-832-7116
rcox@springersteinberg.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2018, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties entered in the case.

/s/ *Ryan T. Cox*
Ryan T. Cox,
Admitted Pro Hac Vice
Colorado Bar Number 49882;
Florida Bar Number 0032686
Springer & Steinberg, P.C.
1600 Broadway
Denver, CO 80202
Tel: 303-861-2800
Fax: 303-832-7116
rcox@springersteinberg.com