**JEFFREY K. STARNES**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT 59403**
**119 First Ave. North, #300**
**Great Falls, MT 59401**
**Phone: (406) 761-7715**
**FAX: (406) 453-9973**
**Email: Jeff.Starnes@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 18-14-GF-BMM** |
| **Plaintiff,** | |
| **vs.** | **NOTICE PURSUANT TO FED. R. EVID. 414** |
| **STANLEY PATRICK WEBER** | |
| **Defendant.** | |

### Introduction

The United States of America, represented by Jeffrey K. Starnes, Assistant

United States Attorney for the District of Montana, hereby provides notice,

pursuant to Fed. R. Evid. 414, of its intent to offer evidence that the defendant

committed other, uncharged acts of child molestation while he worked as a physician for the Indian Health Service on the Pine Ridge Indian Reservation in South Dakota.   In addition to the indictment pending against him in the present case, Weber is also presently charged by indictment in the District of South Dakota with committing the acts of child molestation which the United States seeks to introduce in the above-caption case.[1]   Trial in this matter is currently scheduled to begin on May 14, 2018.[2]

## Argument

### A.    Rule 414 allows admission of previous acts of molestation by the defendant.

Under Rule 414, "[i]n a criminal case in which the defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.   The evidence may be considered on any matter to which it is relevant."   This rule, like Fed. R. Evid. 413, has drastically changed the landscape that once existed under Rule 404(b).   Indeed, previous sex crimes may be admitted to show propensity.

> The new rules will supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b).   In contrast to Rule 404(b)'s general prohibition of evidence of character or propensity, the new rules for sex offenses cases authorize admission and consideration of

---

[1] *See* D. S.D. Case CR-17-50033.

[2] Weber has filed an unopposed motion to continue trial.   (*See* Doc. 30).

evidence of an uncharged offense for its bearing "on any matter which is relevant." This includes the defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.

140 Cong. Rec. H8991 (emphasis added); *see* 140 Cong. Rec. S12990; 137 Cong. Rec. S3238-41 (further explanation); David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi. Kent L. Rev. 15, 18-21 (1994) (further explanation); *United States v. Guardia*, 135 F.3d 1326, 1329 (10th Cir. 1998) ("Under Rule 413 . . . evidence of a defendant's other sexual assaults may be admitted 'for its bearing on any matter to which it is relevant.' ... Thus, Rule 413 supersedes Rule 404(b)'s restriction and allows the government to offer evidence of a defendant's prior conduct for the purpose of demonstrating a defendant's propensity to commit the charged offense."); *United States v. McHorse*, 179 F.3d 889, 896 (10th Cir. 1999) ("propensity to commit sexual assault or child molestation offenses") (quoting legislative sponsors); *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (concluding that there is nothing "fundamentally unfair" about the allowance of propensity evidence); *United States v. Mound*, 149 F.3d 799, 802 (8th Cir. 1998) (rules' intended effect is to supersede Rule 404(b)'s restriction).

Under Rule 414, the Court "may admit evidence that the defendant

committed any other child molestation" when the defendant stands accused of child molestation.   This rule is broad in its reach.   Rule 414(d)(2) describes the wide range of conduct constituting "any other child molestation," including a crime under federal law or state law involving:

> (A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child; (B) any conduct prohibited by 18 U.S.C. chapter 110; (C) contact between any part of the defendant's body--or an object--and a child's genitals or anus; (D) contact between the defendant's genitals or anus and any part of a child's body; (E) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or (F) an attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

If the United States "intends to offer this evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony."   The disclosure must occur "at least 15 days before trial or at a later time that the court allows for good cause."

**B.    Summary of testimony for the charged offenses in the present case.**

Weber was licensed to practice medicine in 1984.   In 1986, he began working for the Indian Health Service ("IHS").   The charged offenses in this case are alleged to have occurred between 1992 and 1995 when Weber was assigned to the Blackfeet Indian Reservation.

### 1.    Testimony of Montana Victim R.F.H.

R.F.H. will testify that he first met Weber at the Nurturing Center in Browning, Montana, when he was approximately 10 years old.   R.F.H. stayed at the Nurturing Center because his parents were divorcing and were not around. Weber maintained a small office at the Nurturing Center where he would see and treat mostly adolescent males.   R.F.H. had behavior problems and was getting into trouble, so he would go to Weber's office and talk about his mom and dad and how it was affecting him.

R.F.H. will testify that there were times when he was alone with Weber in the office and Weber would try to get him to touch Weber's penis and Weber would try to touch his penis.   Weber coerced R.F.H. to engage in the sexual touching by telling him that if he did it, Weber would help him to go back to his parents.   Weber also told R.F.H. if he told anyone about the touching, they would get in trouble and he would not be able to see his parents again.

In another incident at the Nurturing Center in 1993 or 1994, Weber placed his mouth on R.F.H.'s penis and performed oral sex on him.   During this incident, Weber kissed him on his stomach, chest, neck, face, and lips.

R.F.H. recalls that Weber also made him perform oral sex during a "check-up" on at least one occasion.   During this incident, R.F.H. recalls Weber

ejaculating into a tissue after Weber forced him to engage in oral sex.

In another incident, R.F.H. was lying on a table during an "exam" and Weber attempted to insert his penis into R.F.H.'s anus.   R.F.H. prevented Weber from inserting his penis because "it felt wrong" and Weber abandoned the attempt. However, Weber told R.F.H. not to tell anyone or he wouldn't be able to see his parents.   In a similar incident, Weber attempted to sit on R.F.H.' penis during a "check-up" but had to abandon that attempt.

Finally, R.F.H. recalls that Weber would invite R.F.H. over to his home on occasion.   While there, Weber would give him soda, candy, and small amounts of money.

### 2.    Testimony of Montana Victim G.R.C.

G.R.C. first met Weber at Weber's house on the in Browning, Montana, because several boys around his age would go to Weber's house to "hang out" at Weber's invitation.   G.R.C. believes he was in middle school and approximately 13 years of age at the time he first met Weber.

G.R.C. made frequent trips to Weber's house and spent time inside the house both with other boys and alone.   At the home, G.R.C. and other boys played a stereo, watched television, played video games, ate food such as pizza and popcorn, and drank sodas.   On several occasions, Weber provided alcohol –

typically vodka mixed with soda or a fruit beverage – for the boys to drink with him.   Weber provided the food, drinks, and entertainment at no cost.

Weber gifted items like clothing to some of the boys and recalls Weber giving him and others small amounts of cash.   Weber also took G.R.C. on several trips.   On one occasion, Weber took G.R.C. and other boys to the Pizza Hut in Cut Bank, Montana.   On another occasion, Weber took several boys on a hiking trip in the mountains by Upper Two Medicine.   Weber always provided transportation for these trips in his personal vehicle and always covered all of the expenses for the trips including gas, food, and lodging.

G.R.C. recalls Weber touching him in uncomfortable ways.   For example, Weber would rub his hand over G.R.C.'s head, neck, and shoulders and also gave him hugs.   One night, when he was alone at Weber's home, Weber came home intoxicated.   G.R.C. was on the couch in the living room playing video games when Weber arrived.   Weber approached him asked G.R.C. to give him oral sex. Weber was acting like he was going to unzip his pants during the request.   G.R.C. refused Weber's sexual advances and walked out of the house.

On another occasion, G.R.C. passed out on Weber's couch after drinking alcohol.   When he woke up, Weber was standing over him and was naked from the waist down.   Weber was masturbating his own penis while using his other

hand to fondle G.R.C.'s penis and testicles over the clothing.

## C.    Summary of evidence offered under Fed. R. Evid. 414.

In 1995, Weber left the Blackfeet Indian Reservation and was assigned to the Pine Ridge Indian Reservation in South Dakota.   Weber worked for IHS at Pine Ridge for over 20 years until he resigned from the HIS in May 2016.   While there, he sexually abused three adolescent boys. The following statements of proposed testimony have been previously disclosed to the defense.

### 1.    Proposed Testimony of South Dakota Victim P.T.B.

P.T.B. was a victim of ongoing sexual abuse by Weber.   P.T.B. will testify that he met Weber as an IHS patient when he was approximately 11 years old. P.T.B. estimates that he and Weber engaged in sexual intercourse two to four times per week from the time P.T.B. was 12 to 15 years old.   Weber's sexual activity with P.T.B. ultimately ceased when P.T.B. reached his early twenties.

The sexual activity between Weber and P.T.B. took place most often in Weber's bedroom at his home on the Pine Ridge Reservation.   Weber provided P.T.B. with various items of value each time they engaged in sexual activity, including money, food, shoes, clothing, alcohol, and a video gaming system.   In December 2004, P.T.B. was in a juvenile detention center ("JDC") in Rapid City,

South Dakota.   Weber signed him out for a pass and then engaged in sexual acts with P.T.B. while on release.

###### 2.     Proposed Testimony of South Dakota Victim E.H.H.

Weber was E.H.H.'s pediatrician from the time he was a baby until he was 21.   The first time E.H.H. went to Weber's home, occurred when E.H.H. was approximately 15 years old.   E.H.H. encountered Weber in the Pine Ridge IHS parking lot when Weber was leaving work.   Weber invited E.H.H. to his house to watch a football game.   E.H.H. agreed and went to the basement area of Weber's home to watch the game.   Weber offered soda and chips to E.H.H.   Sometime after halftime, Weber moved over to the sofa and sat next to E.H.H.   Weber put his arm around E.H.H., rubbed his leg and inner thigh, undid the button of E.H.H.'s jeans, zipped down E.H.H.'s jeans, and asked E.H.H. to take his jeans off. During this time, Weber removed his own pants and masturbated E.H.H.'s penis. Weber simultaneously masturbated his own penis until both he and E.H.H. ejaculated.

During a second incident when E.H.H. was approximately 15, Weber invited E.H.H. to his home for beer.   When they arrived, Weber told E.H.H. to go to the basement where there was a jug of clear alcohol like vodka mixed with a fruity beverage.   Weber gave E.H.H. two OxyContin tablets and told E.H.H. to wash

them down with the alcoholic drink.   After that, they watched pornography together for a period of time and Weber propositioned E.H.H. for both oral and anal sex, telling E.H.H. to "name your price."   When E.H.H. did not accept the invitation, Weber became upset.   E.H.H. eventually blacked out.   When he came to, he was naked on Weber's bed and his rectum was sore.

In a third encounter at Weber's home, again when E.H.H. was approximately 15, Weber gave E.H.H. marijuana.   He subsequently engaged in nonconsensual anal intercourse with E.H.H.   Afterwards, Weber gave E.H.H. $600 in cash and took him shopping.

In a fourth encounter, Weber found E.H.H. walking around the Pine Ridge Reservation one day and demanded that E.H.H. get into his car.   In the glove box, Weber had a bottle of pills and instructed E.H.H. to take three of them.   He subsequently took E.H.H. to his home and penetrated E.H.H.'s anus without his consent.   E.H.H. tried to get away but could not because Weber locked his bedroom door.   When E.H.H. was finished, he gave E.H.H. several dozen "high quality pain killers" for his personal use.

### 3.      Proposed Testimony of South Dakota Victim F.G.

Weber was F.G.'s pediatrician at Pine Ridge IHS. When F.G. was 11 years old, Weber treated him at the hospital for a school physical.   During the exam,

F.G.'s mom was out of the room.   Weber grabbed F.G.'s testicles and penis and "rubbed" F.G.'s penis with his hand until it became erect.   Weber then retrieved a little grey camera and took pictures of F.G.'s erect penis and his buttocks but not of any other part of his body.   When he was finished, Weber said "this is our little secret and you don't' need to tell your mom or nobody."

During a second visit to IHS when F.G. was 11 years old, Weber treated F.G. for the flu.   Weber told F.G. he "had to see if any liquids were coming from him" and told F.G. to drop his pants.   Weber the rubbed F.G.'s penis until he ejaculated.

During a third visit to IHS when F.G. was 12 years old, Weber performed another genital examination on F.G.   During this "exam," kneeled down with his face just inches from F.G.'s exposed penis and testicles.   Weber then masturbated F.G. until F.G. ejaculated.   F.G. did not disclose this incident to his parents because he was afraid his father would kill Weber and then be sent to prison.

When F.G. was 13 years old, Weber invited F.G. to his home to make money by mowing the lawn and cleaning his basement.   While F.G. was boxing items in the basement, Weber came downstairs with a six-pack of Budweiser beer and offered some to F.G.   After F.G. drank three beers, Weber propositioned F.G. for oral sex, telling him "if you want to get paid, you have to earn it."   F.G.

11

eventually acquiesced and Weber inserted his penis into F.G.'s mouth.   When

Weber finished, he told F.G. that he would give him money any time F.G. needed

it.   He then gave F.G. $100 and said "you're not the only one who does this."

## ARGUMENT

As explained below, the molestation of other victims is necessary, highly

probative, and admissible at trial, particularly when the defendant demonstrates the

same *modus operandi* in each case.   *See, e.g., United States v. Sioux*, 362 F.3d

1241, 1244 (9th Cir. 2004) (explaining that Rule 413 [and 414] established "a

presumption—but not a 'blank check'—favoring admission of propensity evidence

at both civil and criminal trials involving charges of sexual misconduct.").

Importantly, this case is exactly why Rules 413 and 414 were created.   For

example, when discussing the rules, Representative Susan Molinari, stated as

follows:

> The proposed reform is critical to the protection of the public from
> rapists and child molesters, and is justified by the distinctive
> characteristics of the cases it will affect.   In child molestation cases,
> for example, a history of similar acts tends to be exceptionally probative
> because it shows an unusual disposition of the defendant—a sexual or
> sadosexual interest in children—that simply does not exist in ordinary
> people.   Moreover, such cases require reliance on child victims whose
> credibility can readily be attacked in the absence of substantial
> corroboration.   In such cases, there is a compelling public interest in
> admitting all significant evidence that will illumine the credibility of
> the charge and any denial by the defense.

. . . .

The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule.   The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

In line with this judgment, the rules do not impose arbitrary and artificial restrictions on the admissibility of evidence.   Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions. No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the uncharged offenses.

Finally, the practical efficacy of these rules will depend on faithful execution by judges of the will of Congress in adopting this critical reform.   To implement the legislative intent, the courts must liberally construe these rules to provide the basis for a fully informed decision of sexual assault and child molestation cases, including assessment of the defendant's propensities and questions of probability in light of the defendant's past conduct.

140 Cong. Rec. H8991-H8992.

Although admissible to show propensity, evidence proffered under Rules 413 and 414 must still pass Rule 403's balancing test.   *See LeMay*, 260 F.3d at 1026.   Rule 403 provides that relevant evidence may be excluded, among other reasons, if "its probative value is substantially outweighed by the danger of unfair

prejudice."   Rule 403, Fed. R. Evid.   In determining whether to admit evidence

under Rules 413 and 414, courts must evaluate the following factors:

    (1)    the similarity of the prior acts to the acts charged;

    (2)    the closeness in time of the prior acts to the acts charged;

    (3)    the frequency of the prior acts;

    (4)    the presence or lack of intervening circumstances; and,

    (5)    the necessity of the evidence beyond the testimonies already offered at trial.

*LeMay*, 260 F.3d at 1027-28.   This list is not exclusive.   *Id.*   Each factor is

addressed below.

      **a.**    **Similarity**

The Ninth Circuit and others have held that acts are sufficiently "similar"

when the defendant demonstrates a pattern of isolating the victims or the acts are

of escalating depravity.[3]   Both characteristics are at play here.   The acts

---

[3] *See United States v.* Granbois, 119 Fed. Appx. 35, 38 (9th Cir. 2004) (unpublished) (upholding this Court's admission of two Rule 413 acts because they "show a pattern of [defendant] conduct involving sexual abuse of minors with increasing boldness and depravity"); *United States v. Hollow Horn*, 523 F.3d 882, 887-888 (8th Cir. 2008) (holding that a rape of the victim's mother 11 years prior by the defendant was relevant to the charge of her child being touched because both offenses involve the defendant preying on defenseless victims); *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001) (finding witness's testimony that defendant sexually molested her 20 years earlier admissible because the "testimony is prejudicial . . . for the same reasons it is probative," because it tended to show his propensity to molest when presented with an opportunity to do so undetected) (emphasis added).

described above illustrate the defendant's *modus operandi* to prey on adolescent males on the cusp of puberty who come from poor economic backgrounds and who have unstable home lives.

The defendant used his position as a pediatrician at IHS to gain access to adolescent males under the guise of conducting "examinations" for various reasons, often starting to offend while the children were alone with him in a doctor's office.   Then, he would groom them by inviting them to his home, offer them soda and junk food and provide entertainment.   He would ply them with alcohol, sexually abuse them, and give them money to keep them quiet.   This was Weber's playbook and utilized it in the same manner each time he offended.

### b.    Closeness in Time

The closeness in time evaluation is influenced by the court's determination of credibility and probative value.   Under this rubric, courts have upheld acts occurring decades earlier when there is evidence the testimony will be sufficiently probative and credible.   *See Lemay*, 260 F.3d 1018 (9th Cir. 2001) (evidence of defendant molesting a young child when he was eight-years-old deemed admissible in prosecution of now 24-year-old defendant for sexual abuse); *United States v. Meacham*, 115 F.3d 1488, 1490-1495 (10th Cir. 1997) (approximately 30 years).

The molestations of Montana victims R.F.H. and G.R.C. occurred between 1992 and 1995, beginning when R.F.H. was approximately 11 and G.R.C. was approximately 13 years old. The molestations of South Dakota victims P.T.B., E.H.H., and F.G., began in May 1998 and continued through approximately June 2011.   Because the first instance of reported molestation of P.T.B. began a mere three years after Weber left the Blackfeet Reservation and moved to the Pine Ridge Reservation, and continued on a frequent basis thereafter, the acts are sufficiently close in time to be admissible.

### c.   Frequency of the Other Acts:

As described above, Weber moved from offending on the Blackfeet Reservation to offending on the Pine Ridge Reservation within a relatively short period of time.   Moreover, once he began offending on Pine Ridge, he continued to offend on a regular bases for more than a decade.   During that time, he sexually abused at least five different victims.   This frequency cuts in favor of the government in light of Rule 414's intent to provide the jury context—*i.e.*, to assist jurors in assessing the probability or improbability the defendant has been mistakenly accused and to show his propensity to commit sexual acts.

### d.   Presence or Lack of Intervening Circumstances Factor

There are no intervening circumstances between the molestations of R.F.H.

and G.R.C. and those of P.T.B., E.H.H., and F.G., other than Weber's

reassignment from the Blackfeet Reservation to the Pine Ridge Reservation.   This

does not indicate a lack of intent to commit a sex offense.   It merely demonstrates

that Weber was willing to molest wherever he lived and worked.

e.      **Necessity of the Evidence.**

Rule 414 opens the admissibility of other sexual assaults for any "matter to

which it is relevant," including the defendant's propensity to commit another

sexual molestation and assessment of the probability or improbability the

defendant has been falsely or mistakenly accused of such an offense.   *See Doe ex*

*rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) ("It is generally

accepted that a defendant with a propensity to commit acts similar to those charged

is more likely to have committed the charged act than another and therefore such

evidence is relevant . . . .").   Prior acts evidence "need not be absolutely necessary

to the prosecution's case in order to be introduced; it must simply be helpful or

*practically necessary*."   *Lemay*, 260 F.3d at 1029 (emphasis in original).   [Rule

413], along with Rule 414 and 415 were to put this evidence "on the same footing

as other types of relevant evidence."   Fed. R. Evid. 413, Historical Notes (citing

140 Cong. Rec. H8968-01).   The congressional intent is to liberally admit

evidence of prior uncharged sex offenses.   *United States v. Benally*, 500 F.3d

17

1085, 1090 (10th Cir. 2007).

Here, the evidence of other sexual molestations is not only helpful, but practically necessary in the nearly inevitable event the defense casts doubt on the victims' credibility.   In *United States v. Redlightning*, 624 F.3d at 1120 (9th Cir. 2010), the Ninth Circuit held that evidence tending to show the defendant committed another sexual offense, namely, a 1990 confession to a sexual assault, was admissible under Rule 413, because it "tended to show that Redlightning had the propensity to commit another sexual assault."   *Id.*

The same is true here.   Though the victims' testimony alone may be enough to convict the defendant, there were no eyewitnesses to the actual molestations—just as the defendant intended.   This is exactly the type of scenario Rules 413 and 414 were built to address.   Congress recognized that in "most rape or molestation cases, it is the word of the defendant against the word of the victim. If the defendant has committed similar acts in the past, the claims of the victim are more likely to be considered truthful if there is substantiation of other assaults." 140 Cong. Rec. H5437-03, H5439.   Moreover, the acts in question occurred more than 20 years ago.   The fact that Weber continued to offend in the same manner for at least 15 years after he left the Blackfeet Reservation provides significant corroboration of R.F.H.'s and G.R.C.'s testimony.

18

**Conclusion**

This case is about a predator that used his position as a physician to impose his deviant sexual will on vulnerable child from broken homes.    He used the same *modus operendi* for more than twenty years to sexually abuse and molest at least five prepubescent, adolescent boys.    It is precisely why Rule 414 exists. Pursuant to Fed. R. Evid. 414, this Court should allow this evidence to be admitted.

DATED this 16th day of April, 2018.

KURT G. ALME
United States Attorney


/s/ *Jeffrey K. Starnes*
JEFFREY K. STARNES
Assistant U.S. Attorney

## Certificate of Compliance

I hereby certify that this notice is proportionately spaced, has a typeface of 14 points or more, and the body of the brief contains 4,135 words.

DATED this 16th day of April, 2018.

> KURT G. ALME
> United States Attorney
>
>
> /s/ *Jeffrey K. Starnes*
> JEFFREY K. STARNES
> Assistant U.S. Attorney