IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Docket |
| vs. ) | No. CR 18-14-GF-BMM |
| ) | |
| STANLEY PATRICK WEBER, ) | |
| ) | Court of Appeals |
| Defendant. ) | No. 19-30022 |
| _____ ) | |

<u>Partial Transcript of Trial with a Jury</u>
<u>Pretrial Conference</u>

Missouri River Federal Courthouse
125 Central Avenue West
Great Falls, MT 59404
Tuesday, September 4, 2018
8:30 a.m. to 8:51 a.m.

<u>BEFORE THE HONORABLE BRIAN MORRIS</u>

<u>UNITED STATES DISTRICT COURT JUDGE</u>

Yvette Heinze, RPR, CSR
United States Court Reporter
Missouri River Federal Courthouse
125 Central Avenue West
Great Falls, MT 59404
yvette_heinze@mtd.uscourts.gov
(406) 454-7805

Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription

**APPEARANCES**

PRESENT ON BEHALF OF THE PLAINTIFF,
THE UNITED STATE OF AMERICA:

        Jeff Starnes
        Assistant U.S. Attorney
        OFFICE OF THE U.S. ATTORNEY
        119 1st Avenue North, Suite 300
        Great Falls, Montana 59401

        Lori A. Harper Suek
        Assistant U.S. Attorney
        U.S. ATTORNEY'S OFFICE
        2601 Second Avenue North, Suite 3200
        Billings, MT 59101

PRESENT ON BEHALF OF THE DEFENDANT:

        Harvey A. Steinberg
        SPRINGER AND STEINBERG
        1600 Broadway, Suite 1200
        Denver, CO 80202

        Nicole L. Siefert
        RHOADES, SIEFERT & ERICKSON, P.L.L.C.
        430 North Ryman, Second Floor
        Missoula, MT 59802

        Ryan T. Cox
        SPRINGER AND STEINBERG
        1600 Broadway, Suite 1200
        Denver, CO 80202

                -o0o-

I N D E X

| PROCEEDINGS | PAGE |
|---|---|
| Pretrial Conference | 4 |
| Reporter's Certificate | 19 |

EXHIBITS

| GOVERNMENT'S | ADMITTED |
|---|---|
| Government's Exhibits 1, 2, 3, 4, 5, and 6 | 15 |

1                    PROCEEDINGS
2        (In chambers.)
3        (Defendant present.)
4            THE COURT:  Good morning.
5            Be seated.  Welcome back.
6            MR. STARNES:  Thank you, Your Honor.
7            MR. STEINBERG:  Thank you.
8            THE COURT:  Are we ready to proceed, Mr. Starnes?
9            MR. STARNES:  I believe so, Your Honor.
10           THE COURT:  Mr. Steinberg?
11           MR. STEINBERG:  Okay.
12           THE COURT:  Length of trial?
13           MR. STARNES:  I think we'll have it to the jury by
14   Thursday, Your Honor.  So I think about two days for government
15   testimony.
16           THE COURT:  Mr. Steinberg?
17           MR. STEINBERG:  I agree.
18           THE COURT:  Okay.  You have done voir dire before.
19           I'll do voir dire.  It will probably take a couple
20   hours.  Then each side will get a chance to do their own voir
21   dire.  Any challenges for cause you make at sidebar.  It's up
22   to you to lay foundation before the challenge.  You can either
23   wait until you've finished with all of your voir dire, or, if
24   you want to do it at that moment, you can ask for a sidebar.  I
25   don't want to make you try to challenge a juror in open court.

1  And then, if I deny it, then the juror may not be so thrilled
2  with all of you.
3         So whatever you do, don't finish voir dire and turn
4  and say, "We pass the jury for cause," then come back when I go
5  through the challenges and tell me you have a challenge for
6  cause.
7         Are you clear on that?
8         MR. STEINBERG: Yes, sir.
9         THE COURT: Okay. Preemptory challenges, pass the
10 list back and forth. You get 11, and the government gets 7.
11 Please try to speed that process up as much as you can. We do
12 that in court. The jury is at ease. The white noise machine
13 is on. I haven't been able to replicate Judge Watters's
14 process. We don't have a jury room on this floor. It's quite
15 an ordeal to get everyone back downstairs.
16        Okay. Any questions about voir dire?
17        MR. STARNES: No, Your Honor.
18        THE COURT: All right.
19        MR. STEINBERG: I do.
20        THE COURT: Yes.
21        MR. STEINBERG: In terms of our voir dire, is it
22 limited to the 12 in the box?
23        THE COURT: No, it's limited to -- we call up 31
24 people.
25        The jury list is, roughly, 50, Madam Clerk?

 1                THE CLERK:  Yes.
 2                THE COURT:  So we call up 31.  They have been
 3   selected.  We don't spin the wheel anymore.  They have a
 4   computer that does that.  31 people are called up to the
 5   chairs, so it's limited to those 31.
 6                MR. STEINBERG:  Okay.
 7                THE COURT:  If one of them is removed for some
 8   reason, we call a replacement.  And then we will -- I will
 9   welcome the substitute and then ask them if any of the issues
10   we discussed apply to them, depending on where we are in the
11   process.  Sometimes I will -- if it's late in the process, you
12   know, we're almost done, I might even call that person directly
13   to the sidebar with counsel and question them there.
14                One thing, when I'm questioning the jury, I typically
15   will not remove someone immediately to avoid a stampede of
16   people who have medical conditions or some physical ailment.
17   That prevents them from -- I'll wait until I'm finished
18   questioning.  And then, either at sidebar or on my own, I'll
19   excuse that person for cause.  So if someone says, you know,
20   "I've got a medical condition" and they're going on about it,
21   don't be surprised if I say, "Thank you very much," and move
22   on.  I'll pick that up at the end of the process.
23                MR. STEINBERG:  Then, in terms of the exercise of our
24   preempts, are they individual?  One at a time?  Or you do one,
25   two --

1         THE COURT: It's one -- we pass the sheet back and
2    forth the same number of times.
3         THE CLERK: Seven.
4         THE COURT: Seven times. So you have a couple
5    times -- one, two -- one, one, two, one, two, one -- however
6    the math works out.
7         MR. STEINBERG: Okay. And then, finally, in terms of
8    the exercise of the preempts, are they limited to the 12 in the
9    box in the sense that --
10        THE COURT: No, no, any of the 31.
11        MR. STEINBERG: Okay.
12        THE COURT: We pick -- we will select 13 jurors, and
13   one of whom will be excused at the end of the evidence.
14        MR. STEINBERG: Do we know who the alternate is?
15        THE COURT: No, we don't. That person is selected at
16   that point. I will explain to the jurors that while 13 of them
17   have to pay careful attention, one of them will be excused
18   before deliberations.
19        MR. STEINBERG: Just -- sorry. Do counsel know who
20   the --
21        THE COURT: No. No one does. No one except the
22   computer.
23        Any questions about the jury selection process?
24        MR. STARNES: No.
25        MS. SUEK: No.

1    THE COURT: I thought I heard a...
2    Okay. With regard to the indictment, my practice is
3 typically to summarize the indictment.
4    Any objection to that?
5    MS. SUEK: No.
6    MR. STARNES: No, Your Honor.
7    MR. STEINBERG: No, sir.
8    THE COURT: I'll explain that there's a -- the
9 allegations against Mr. Weber and the time frame involved and
10 explain that the alleged victims are now adults so don't be
11 surprised if they appear differently than in the charges.
12    With regard to the alleged victims, there are
13 witnesses that are in custody. That's not a surprise to
14 anyone.
15    I assume they will be in jail clothing?
16    MR. STARNES: That's correct, Your Honor.
17    MS. SUEK: That's what we told them.
18    THE COURT: Then, any objection if we just have the
19 marshal escort them to the witness stand?
20    MR. STARNES: No, Your Honor.
21    THE COURT: We have done that several times in the
22 past without any problem. There's no surprise to anyone,
23 including the jurors, that they are in custody anyway.
24    MS. SUEK: Right.
25    THE COURT: All right. Did you receive copies of the

```
 1  preliminary instructions?
 2          MS. SUEK:  Yes.
 3          MR. STARNES:  We did, Your Honor.
 4          THE COURT:  Okay.  Why don't you review those between
 5  now and the time you go back into court.  If you have any
 6  objections, let me know.
 7          Exclusion of witnesses?
 8          MS. SUEK:  Yes, please.
 9          MR. STARNES:  Yes, Your Honor.
10          THE COURT:  Okay.  I have your witnesses.  Any of
11  them here?
12          MR. STEINBERG:  (Shaking head.)
13          THE COURT:  Just make sure they are out.
14          MR. COX:  No.
15          THE COURT:  All right.  Evidentiary issues:  Anything
16  besides the 403/404 and 413/414 witnesses?  I signed an order
17  allowing Dr. --
18          MR. STARNES:  -- Eigenbrode to testify via
19  videoconferencing.  No objection to that, Your Honor.
20          THE COURT:  And does Dr. Eigenbrode have to testify
21  on a particular day or just when your case comes up?
22          MR. STEINBERG:  I will tell you, I don't know that
23  she will testify.  It depends on cross-examination.  She's a
24  fact witness in terms of what was said --
25          THE COURT:  My only question is whether you need to
```

1  have her at a particular time or out of order?
2           MR. STEINBERG: No, sir.
3           THE COURT: Okay. Thank you.
4           Anything besides the -- with regard to evidence, any
5  evidentiary issues besides the witnesses?
6           MR. STARNES: Well, just so the Court is aware, we
7  did file a notice of expert disclosure for Dr. Foster.
8           THE COURT: Oh, right.
9           MR. STARNES: Again, that's going to depend largely
10 on the cross-examination of Mr. Four Horns. Mr. Four Horns
11 will be our first witness. So I think we will have the issues
12 established from the get-go, Your Honor.
13          THE COURT: All right. I assume your first two
14 witnesses are the alleged victims?
15          MR. STARNES: That's our intent, yes, Your Honor.
16          THE COURT: So what I would intend to do is take a
17 break after the second witness is finished, and we'll talk
18 about the 404(b) again and the 413/414 issues.
19          MR. STARNES: Okay.
20          THE COURT: And then I gave you my tentative rulings
21 last time back in August on the 404(b) and 413/414 witnesses.
22          Are we clear on those rulings?
23          MS. SUEK: Yes.
24          THE COURT: Has anything changed since that time?
25          MS. SUEK: The only change is that everyone is aware

```
 1  that we're not calling Mr. True Blood.  He was a potential
 2  notice-up for --
 3              MR. STARNES:  That's right.
 4              THE COURT:  Those are the medical records?
 5              MR. STARNES:  That's correct.
 6              THE COURT:  All right.  And then I don't think I have
 7  given any rulings yet on the South Dakota.
 8              MS. SUEK:  You haven't.  But just to be clear, he's
 9  not here.  We're not going to offer.
10              THE COURT:  Okay.  Mr. Steinberg, clear on those
11  rulings?
12              MR. STEINBERG:  Yes, sir.
13              THE COURT:  Okay.  And we will give you another crack
14  at persuading me after the government's potential two
15  witnesses.
16              MR. STARNES:  And if I could just be clear, Your
17  Honor, it's my recollection the Court has already told us that
18  Justin Meineke, who was the late disclosure, the touching
19  incident in Missoula, he will be allowed to testify?
20              THE COURT:  Right.
21              MR. STARNES:  Okay.
22              THE COURT:  And counsel's clearly able to
23  cross-examine him regarding the late disclosure.
24              MR. STARNES:  Certainly.
25              THE COURT:  All right.  Any other evidentiary issues?
```

```
 1              MR. STARNES:  No, Your Honor.
 2              MR. STEINBERG:  Yes.  One of the witnesses that the
 3   government is going call is a Mr. Crawford.  Mr. Crawford was a
 4   custodian who at one time saw Dr. Weber bring a couch into his
 5   office area.  I think that that's irrelevant.  I think it only
 6   serves for speculation, and there are not witnesses who are
 7   going to say anything happened on a particular couch in his
 8   office.  But it certainly leads to speculation of other victims
 9   out there and that he was using the couch somehow to sexually
10   assault them.  So we're asking --
11              THE COURT:  I thought I ruled on that issue.
12              MR. STEINBERG:  If you did, I missed it.  I
13   apologize.
14              THE COURT:  He was a custodian?
15              MR. STEINBERG:  Yes.  I think that there was a
16   different custodian issue that you ruled about.  And it wasn't
17   a custodian.  It was a guy who saw -- who went to the house.
18              MR. STARNES:  That was Mr. Davis.
19              MR. STEINBERG:  Right.
20              MR. STARNES:  Who we ended up not -- we removed him
21   from our witness list.
22              THE COURT:  He was the maintenance employee.
23              MR. STEINBERG:  Yes, sir.
24              MR. STARNES:  That's correct.
25              THE COURT:  Who is Mr. Crawford?
```

1       MR. STARNES: Mr. Crawford was a maintenance janitor
2  at IHS during the time that Dr. Weber was employed there.
3  Mr. Steinberg is correct. We intend to call him to testify
4  that on occasion he saw Dr. Weber holding a clinic or treating
5  patients in his office, not in the actual patient area. And
6  there was one day where he saw Dr. Weber bring a couch into his
7  office area. He went out into the hall, drug the couch, did
8  not see a boy come out.
9       THE COURT: Wait a minute. Mr. Crawford saw
10 Dr. Weber drag a couch from the hallway into his office?
11      MR. STARNES: Correct. So --
12      THE COURT: You said he did not see a boy come out.
13      MR. STARNES: So I believe he will testify that he
14 was seeing patients at that time. There were adolescent males
15 that were being seen by Dr. Weber.
16      THE COURT: In his office?
17      MR. STARNES: Correct, which was not a patient
18 treatment area.
19      THE COURT: Well, let's -- I want to hear more about
20 that. Maybe when we discuss the other issues.
21      MR. STARNES: Certainly, Your Honor.
22      THE COURT: Any other witnesses?
23      MR. STEINBERG: No, sir, thanks.
24      THE COURT: All right. I have the exhibit list.
25 It's pretty short. Any objection to the exhibits?

```
 1              MR. STEINBERG:  No, sir.
 2              THE COURT:  Any stipulations on admissibility?
 3              MR. STARNES:  Well, yes, Your Honor.  I move for the
 4   admission of Government's Exhibits 1 through 6.  I'd be happy
 5   to identify those for the record if there's no objection from
 6   the defense.
 7              MR. STEINBERG:  I didn't bring my list in.
 8              MR. STARNES:  I can show you copies too.  Maybe I
 9   can.
10         (Complying.)
11              MR. STEINBERG:  I don't have any objection to these,
12   sir.
13              THE COURT:  All right.
14              MR. STARNES:  I can identify them.
15              THE COURT:  I will.  I have them right here.
16   Exhibits 1 through 6 are admitted:  That's tribal enrolment
17   form for G.R.C.; tribal enrolment form for R.F.H.; there's two
18   Number 3's, Federal Register of recognized tribes; 4 is a 1994
19   photograph of R.F.H.; 5 is a 1994 photograph of M.F.H.; and 6
20   is a passport application photograph for Dr. Weber.
21              Those are admitted without objection.
22         (Government's Exhibits 1, 2, 3, 4, 5, and 6 were admitted
23           into evidence.)
24              THE COURT:  Any other stipulations?
25              MR. STARNES:  No, Your Honor.
```

1    THE COURT:  Agreement on the Indian status of R.F.H.
2 and --
3    MR. STARNES:  No.  Well, any objection to the -- or a
4 stipulation as to -- well, I think the way we typically handle
5 that, Your Honor, if there's a case out there that could be
6 problematic, is stipulate the admissibility of the enrollment
7 records, which is --
8    THE COURT:  All right.  Then that will be it.
9    Okay.  And then jury instructions we'll have to you
10 this afternoon after lunch.  We'll have our proposed final
11 instructions so you can start reviewing.  We'll settle those
12 later in the week.
13    Opening statements:  How long do you need?
14    MS. SUEK:  15 minutes.
15    THE COURT:  Mr. Steinberg?
16    MR. STEINBERG:  That's fine.
17    THE COURT:  Okay.  15, 20 minutes.  Anything else?
18    MR. STARNES:  One issue, just we want to have this on
19 the record.  We've talked to the defense about this.  Since the
20 start on this case, there's been an additional new victim
21 that's been identified.  He made a partial disclosure while he
22 was incarcerated in Glacier County, the jail up there.  That
23 person will not be making an appearance in this case, and the
24 defense knows this.  But we're investigating that matter, and
25 we're contemplating a new indictment.

1    THE COURT: Okay. You have that information?
2    MR. STEINBERG: I have it now, and I had it before.
3    THE COURT: Okay.
4    MR. STEINBERG: I do have one other question.
5    THE COURT: Yes.
6    MR. STEINBERG: The Court has indicated that it will
7 make a determination on the 413/414 witnesses. I would like a
8 day. So I don't know if the Court intends to decide that after
9 it hears from the two victims today. But what I don't want to
10 be in a position is to not have a day to prepare for that.
11    THE COURT: So this is Tuesday. I would assume we'll
12 have a jury picked -- I'd like to get a jury picked before
13 lunch. Sometimes that means we take lunch late. We'll
14 probably start this afternoon, if all goes well, with
15 preliminary instructions and opening statements around
16 2:00 o'clock. And then so around 3:00 o'clock the government
17 will start putting on witnesses. We typically will go until
18 5:00, 5:30, depending. I don't like to stop in the middle of a
19 witness. So I'll explain to the jury that we'll go until 5:00
20 or 5:30.
21    You will have your two alleged victims. Then we'll
22 take a break and discuss -- how long do you think each of those
23 will take?
24    MR. STARNES: I think Mr. Four Horns's testimony will
25 probably be the longest. Based on cross-examination --

```
 1            THE COURT:  I'm assuming --
 2            MR. STARNES:  -- at least an hour.
 3            THE COURT:  I'm assuming we'll finish those two
 4   today, perhaps.
 5            MR. STEINBERG:  Right.
 6            THE COURT:  And then we can talk at the end of the
 7   day.  The government can put on the rest of their 404(b)
 8   witnesses or Browning witnesses and then the South Dakota
 9   witnesses.  That would be on Thursday.  Late Wednesday,
10   Thursday.
11            MR. STARNES:  And most of our --
12            MS. SUEK:  I would think that we would be done by the
13   close of business on Wednesday, unless cross-examination is
14   just --
15            THE COURT:  Well, you know the identity of the South
16   Dakota witnesses?
17            MR. STEINBERG:  Two of them, yes.
18            THE COURT:  Well, you know the identity of the
19   413/414 witnesses?
20            MR. STEINBERG:  Yes, sir.
21            THE COURT:  There's no mystery about that.  What do
22   you need a day for?
23            MR. STEINBERG:  Just to -- I don't know what they
24   are going to -- obviously, I'm assuming that they're not going
25   to be mentioned in openings unless the Court has --
```

```
 1            THE COURT:  No.
 2            MR. STEINBERG:  And I just wanted the night to gather
 3   my thoughts in terms of how to approach that.
 4            THE COURT:  Well, we'll see how much time we -- I'll
 5   give you some period of time, but you should start gathering
 6   those thoughts now.
 7            MR. STEINBERG:  I am.
 8            THE COURT:  Okay.  Anything else?
 9            MR. STARNES:  No, Your Honor.
10            MR. STEINBERG:  No, sir.
11            THE COURT:  All right.  It's 10 to 9:00.  Use the
12   restroom.  Get yourself ready to go.  We'll get the jury up
13   here.  We'll start right at 9:00 o'clock.  We'll probably take
14   a break about 10:30.  It's a fairly lengthy break.  We need to
15   get the whole jury pool out to the bathroom and back in.  And
16   then we'll try to get away with one break.  We'll see how long
17   voir dire takes.
18            All right.  See you in court.  Thank you.
19            (Whereupon, trial proceedings continued.)
20
21                              --oOo--
22
23
24
25
```

REPORTER'S CERTIFICATE

1    

2       I, Yvette Heinze, a Registered Professional

3   Reporter and Certified Shorthand Reporter, certify that the

4   foregoing transcript is a true and correct record of the

5   proceedings given at the time and place hereinbefore mentioned;

6   that the proceedings were reported by me in machine shorthand

7   and thereafter reduced to typewriting using computer-assisted

8   transcription; that after being reduced to typewriting, a

9   certified copy of this transcript will be filed electronically

10  with the Court.

11      I further certify that I am not attorney for, nor employed

12  by, nor related to any of the parties or attorneys to this

13  action, nor financially interested in this action.

14      IN WITNESS WHEREOF, I have set my hand at Great Falls,

15  Montana, this 18th day of March, 2019.

16

17      /s/ *Yvette Heinze*

18      _____
        Yvette Heinze
        United States Court Reporter

19

20

21

22

23

24

25